UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JEFF PERRY, on his own behalf
and others similarly situated,

       Plaintiffs,

v.                                                    Case No. 8:08-CV-00491-T-33AEP

M/I HOMES, INC., a foreign
corporation,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**

THIS MATTER comes before the Court on Plaintiff, Jeff Perry, on behalf of himself and others similarly situated, and Defendant, M/I Homes, Inc.'s (the "Parties"), **Joint Motion for Court Approval of Class Certification and Confidential Settlement Agreement** (the "Motion") (Dkt. No. 75) filed on October 27, 2009.[1] In their Motion, the Parties requested an *in camera* review of their confidential settlement agreement (the "Agreement"). On December 1, 2009, the Court entered an Order directing the Parties to file the Agreement with the Court via the Court's CM/ECF if the Parties desired the Court's approval of the Agreement. (Dkt. No. 77.) Thereafter, to comply with the Court's Order, the Parties filed a redacted copy of the Agreement and requested that the settlement amount remain confidential and be presented orally to the Court at an open hearing. (Dkt. Nos. 78, 85.) The Court allowed the Parties to present the settlement terms orally to the Court and conducted a hearing on February 5, 2010, at which the Parties

---

[1] The Motion was referred to the undersigned by the Honorable Virginia M. Hernandez Covington (Dkt. No. 76).

disclosed the financial terms of the Agreement to permit the Court to evaluate the reasonableness of the settlement terms and amounts. For the reasons to follow, the Court recommends approval of the Agreement, subject to the Parties' adoption of the proposed revisions set forth herein.

## I. Factual Background

Plaintiff alleged that he was employed by Defendant as a non-exempt, salaried "Construction Superintendent" a/k/a "Production Supervisor." (Dkt. No. 1 ¶ 1.) According to Plaintiff, Defendant engaged in a policy of misclassifying Plaintiff and others similarly situated as exempt and failing to pay overtime compensation for hours worked in excess of forty within a work week in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). (Dkt. No. 1 ¶ 6.) Plaintiff sought recovery for all overtime hours at one and one-half the regular rate of pay for those hours worked in excess of forty hours per week. (Dkt. No. 1 ¶ 11.) Defendant denied all liability and wrongdoing, however, in the interest of avoiding an expensive and protracted litigation, entered into settlement negotiations with Plaintiff. (Dkt. No. 78, Ex. 1 at 3-4.) On October 27, 2009, the Parties informed the Court that they settled the case and requested that the Court conditionally certify the class and approve their Agreement.

## II. Discussion

### A. Conditional Certification of Settlement Class

An FLSA action "may be maintained against any employer ... by any one or more employees for and in behalf of himself or themselves and other employees *similarly situated*." 29 U.S.C. § 216(b) (emphasis added). The plaintiffs bear the burden at all times to demonstrate that the class is similarly situated. *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir.

1996). Nevertheless, this burden is lighter than "that for joinder or for certification of a class action under Federal Rules of Civil Procedure 20(a) or 23, respectively." *Gonzalez v. Hair Club for Men, Ltd., Inc.*, No. 6:06-cv-1762-Orl-28JGG, 2007 WL 1079291, at *2 (M.D. Fla. Apr. 9, 2007) (*citing Grayson*, 79 F.3d at 1096). The plaintiffs need only demonstrate that their positions are "similar, not identical" to the positions held by the potential plaintiffs. *Grayson*, 79 F.3d at 1096. That said, unsupported allegations that FLSA violations were widespread and that additional plaintiffs exist are insufficient to meet the plaintiffs' burden. *Haynes v. Singer, Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983).

In this case, the Parties have stipulated, for settlement purposes only, to certification of a class consisting of "all salaried 'Construction Superintendents' a/k/a 'Production Supervisors' employed by [Defendant] nationwide over the last three years." (Dkt. No. 30 at 1; Dkt. No 1 ¶ 3, Dkt. No. 78, Ex. 1 ¶ 2.1.1.) Plaintiff asserts that the "Construction Superintendents" were uniformly subject to the same job description, duties, and responsibilities, regardless of the location where they were employed, that they were paid a set salary, and that they regularly worked in excess of forty hours per week. (Dkt. No. 30 at 2-3.) For purposes of determining whether the terms of the Agreement are fair, the Court finds that the members of the Class are similarly situated within the meaning of Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b). *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (*quoting Dybach v. State of Florida Dep't of Corr.*, 942 F.2d 1562, 1567 (11th Cir. 1991)) (stating that "before facilitating notice, a 'district court should satisfy itself that there are other employees . . . who desire to 'opt-in' and who are 'similarly situated' with respect to their job

3

requirements and with regard to their pay provisions.'")[2]  Accordingly, the Court recommends that the proposed class be certified as an FLSA collective action for purposes of settlement.

### B. FLSA Settlements

Congress enacted the FLSA to protect workers from sub-standard wages and excessive hours that can result from the inequality in bargaining power between employers and employees. *Brooklyn Sav. Bank v. O'Neill*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L.Ed. 1296 (1945). The FLSA, therefore, provides that "[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The FLSA's provisions are mandatory and, except in two narrow circumstances, generally are not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank*, 324 U.S. at 706. The two circumstances in which FLSA claims may be compromised are claims that are (1) supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c) and (2) when a court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b). *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Settlements are permitted in the latter context in part because initiations of the action by the employees provides some assurance of an adversarial context. *Id*. at 1354. "The employees

---

[2] Plaintiff has submitted the declarations of several current and former "Construction Superintendents" stating that they have "personally spoken with other 'Construction Superintendents' a/k/a 'Production Supervisors' who worked for Defendant and they too have expressed an interest in joining this lawsuit if given the opportunity." (*See* Dkt. No. 30, Exs. 2-5.)

4

are likely to be represented by an attorney who can protect their rights [and] . . . the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching." *Id*. To insure that the context was, in fact, adversarial, before a district court may approve a settlement, it must scrutinize the agreement to determine whether it is a fair and reasonable resolution of a bona fide dispute. *Id*. at 1353. If the settlement reflects a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute, the court may approve the settlement "in order to promote the policy of encouraging settlement in litigation." *Id*. at 1354.

### *1) Financial Terms*

The Agreement is based on the certification of a collective action involving an FLSA claim for overtime compensation. As required by the FLSA, this is an "opt-in" collective action affecting only those individuals that affirmatively agree to participate in it. Defendant agrees to pay up to a "Maximum Settlement Amount," which includes administrative costs, and attorneys' fees and costs. Each opt-in Plaintiff will receive an amount calculated by using the fluctuated work week method based on his/her salary, compensating for over seven hours of overtime per week for every week that the opt-in Plaintiff was employed by Defendant between September 11, 2007 and September 11, 2009. Any portion of the "Maximum Settlement Amount" that is not paid would revert back to Defendant.

The Parties have presented the financial terms orally to the Court at a hearing on February 5, 2010, and the Court finds that the Parties have negotiated at arm's length and that the terms are a fair and reasonable resolution of a bona fide dispute.

*2) Claims Released*

The agreement defines "Released Claims as

> any and all claims, demands, actions, causes of action, rights, offsets, suits, damages (whether general, special, punitive, or multiple), lawsuits, liens, costs, losses, expenses, penalties or liabilities of any kind whatsoever, for any relief whatsoever, including monetary, injunctive or declaratory relief, or for reimbursement of attorneys' fees, costs or expenses, whether known or unknown, whether direct or indirect, whether by assignment or otherwise, which existed as of the date of execution of this Agreement, whether under federal law or the law of any state, whether alleged or not alleged in the Litigation, whether suspected or unsuspected, whether contingent or vested, which the Plaintiff, Opt-In Plaintiffs and Participating Claimants have had, now have, or may have in the future against the Released Parties or any of them, which were or could have been raised in the Litigation, and which arise out of or are related in any way to any claim that M/I Homes violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq., or any other state or local statute, ordinance or regulation that relates directly or indirectly to wages and/or hours of employment. In essence, "Released Claims" is not intended to be a general release and is limited to FLSA claims and state wage and hour claims.

More succinctly stated, the Released Claims consist of every potential claim possessed by an Opt-in Plaintiff that is related to the claims asserted in the present litigation, so long as the claim accrued prior to the date of the execution of the Agreement. The Court finds that the release language is acceptable and warrants approval.

*3) Notice*

The Agreement provides that Defendant will prepare the names and last known addresses and telephone numbers for each class member, such that a Claims Administrator may engage in the processing and mailing of each Class Notice.

With regard to the Class Notice form, the Court reviewed the document originally submitted by the Parties (Dkt. No. 78, Ex. 1 at 30-31) and proposed a number changes, such as including the exact amount to which each opt-in Plaintiff will be entitled and the formula used to calculate the amount. The Parties have provided the Court with a form that incorporates most of these changes. Nevertheless, the Court finds that minor revisions are still needed and has edited the proposed Class Notice to reflect these minor changes. A copy of the edited version is attached to this Report and Recommendation.[3] Accordingly, the Court recommends approval and distribution of the Class Notice upon the Parties' adoption of these proposed changes.

### 4) Attorneys' Fees

According to the axiomatic American Rule, all parties are to bear their own costs in litigation. *See, e.g.*, *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). One of the recognized exceptions to the American Rule is the "common fund" case. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval. *Id*. "The common fund exception 'rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense.'" *Id.* (*citing Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980)). The exception can apply even where the parties agree that any unclaimed portion of the common fund will revert to the party that established it. *See Camden*, 946 F.2d at 771 n.2.

---

[3] The Court's revisions to the Parties' proposed Class Notice are contained in brackets.

In collective FLSA actions, the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination. *See*, *e.g.*, *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 849-50 (5th Cir.1998). Within this circuit, the district court has great latitude in formulating attorney's fee awards, subject only to the necessity of explaining its reasoning so the appellate court can undertake proper review. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1293 (11th Cir. 1999).

In this case, the Agreement sets aside 31.5 percent of the total common fund for attorneys' fees. The Court recognizes that traditionally in cases such as the one at bar, counsel seek fees based on the size of the fund recovered for the benefit of the class. The Court is not necessarily adverse to an attorneys' fee award in the 31.5 percent range, as long as counsel properly support their motion for such an award.[4] Accordingly, the Court recommends that the attorneys' fees be preliminary approved, subject to final court approval.

### III. Conclusion

For the reasons stated herein, this Court respectfully **RECOMMENDS** that the Parties' Joint Motion for Court Approval of Class Certification and Confidential Settlement Agreement

---

[4] Given the somewhat unusual circumstances of an opt-in class action, the Court is inclined to find that the amount of funds dispersed for claims and for costs would provide a more appropriate gauge of the value of the attorneys' efforts than the size of the common fund itself. If all potential class members join in the settlement, those two measures would be the same. However, to the extent that the deal struck by counsel for the plaintiffs proves unattractive to potential class members, who therefore opt to pursue any claim they might have individually, that shortcoming ought to be reflected in the ultimate award of fees. The same would likely hold true if counsel's efforts at providing notice to potential class members are not effective. While the Court has no reason to think that Plaintiffs' counsel have fallen short in these areas, the Court finds that the reasonableness of attorneys' fees is more adequately resolved once the class has been determined and the funds dispersed to the opt-in Plaintiffs.

(Dkt. No. 75) be **GRANTED** and the Joint Stipulation and Settlement Agreement be **TENTATIVELY APPROVED** contingent on the Parties' incorporation of the revisions set forth below:

(1) The Parties should delete paragraph 2.3.1, to reflect this Court's Order directing the Parties to file the Agreement with the Court via CM/ECF;

(2) The Parties should revise paragraph 2.11.14 to reflect the fact that this Court will not retain jurisdiction to enforce the Agreement after this case is dismissed;

(3) The Parties should revise paragraph 2.11.7 to state that any modification of the Agreement will be made only with Court approval to ensure that the modification is fair and reasonable; and

(4) The Parties should adopt the revisions as suggested by the Court in the Class Notice attached to this Report and Recommendation.

Upon the filing of the revised Class Notice and Agreement, the undersigned recommends that the Court enter an order granting final approval of the settlement, dismissing the case with prejudice, and retaining jurisdiction to determine, upon proper motion, the award of attorneys' fees and costs.

**IT IS SO REPORTED** at Tampa, Florida on this 12th day of February, 2010.

ANTHONY E. PORCELLI
United States Magistrate Judge

**NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a de novo determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice. 28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

Copies furnished to:
Hon. Virginia M. Hernandez Covington
Counsel of Record